UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Fayez Dahleh,<br><br>Plaintiff/Counter-Defendant<br>v.<br><br>Midland National Life Insurance Company,<br><br>Defendant/Counter-Plaintiff/Third-Party Plaintiff,<br>v.<br><br>Antonio Cagas, Elsie Cagas and Bonifacio Cenir,<br><br>Third-Party Defendants. | No. 1:24-CV-11931<br><br>Honorable Joan H. Lefkow |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE OR DISMISS DEFENDANT'S COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

## INTRODUCTION

In this this breach-of-contract action by plaintiff as the current owner and beneficiary of a life insurance policy to compel payment of death benefits, the defendant insurer responds with a two-count pleading for interpleader and rescission, styled as "Counterclaims and Third-Party Complaint." Pointing to an alleged false statement by a prior owner regarding her relationship with the insured, defendant says interpleader is proper because some or all of the earlier policy changes should be rescinded, leaving one of plaintiff's predecessors as the possible rightful beneficiary. At the same time, defendant joins the litigation as a self-interested claimant for the death benefits, stating the policy lapsed for non-payment and defendant was induced to reinstate the policy in reliance on the prior owner's false statement.

As shown below, defendant's pleading should be stricken or dismissed on four grounds. First, the interpleader claim is infirm because there is no jurisdiction over defendant's

statutory interpleader claim, and its request to interplead by court rule – as an asserted "neutral stakeholder" that "claims no beneficial interest in the policy proceeds" – is negated by its affirmative claim to the proceeds and by other allegations that negate interpleader. Second, defendant's claim for rescission also falls short by improperly incorporating the interpleader allegations and by reserving the right declare the policy "void *ab initio*" based on future discovery. Third, both claims include allegations that plaintiff used a business address and his son's phone number when acquiring the policy, and further that plaintiff's son made false statement after the insured's death, without explaining how those allegations would relate to either claim. Fourth, defendant's third-party claims against the new parties should be stricken and refiled as counterclaims in accordance with applicable rules.

For those reasons, as more fully set forth below, defendant's Counterclaims and Third-Party Complaint should be stricken or dismissed.

## STATEMENT OF FACTS[1]

***Defendant issues a life insurance policy; following a beneficiary change connected with the policy sales agent's address, the sales agent becomes the owner and beneficiary by falsely claiming to be the insured's daughter***

1. In 2008, Pilar Cenir, then 74 years old, "purportedly" applied for a $900,000 life insurance policy from defendant, an insurer. (Counterclaims/Third-Party Complaint ¶¶ 1, 10-12.) The "writing agent" for the policy was Lucita Zamoras, an "independent contractor sales producer for [defendant's] insurance products." (*Id.* ¶¶ 13, 22.) The initial policy beneficiary was Pilar's husband, third-party defendant Bonifacio Cenir. (*Id.* ¶ 14.)

2. In 2011, Pilar – "or somebody masquerading as [her]" – submitted a

[1] Pursuant to Fed. R. Civ. P. 12(b)(6), the following allegations from the counterclaims and third-party complaint are presumed true for purposes of this motion. *Covenant Aviation Security, LLC v. Berry*, 15 F. Supp. 3d 813, 816 n.2 (N.D. Ill. 2014).

beneficiary change request to defendant, removing Pilar's husband Bonifacio as beneficiary and instead naming third-party defendants Antonio Cagas and Elsie Cagas as primary and contingent beneficiaries, respectively. (Counterclaims/Third-Party Complaint ¶ 16.) Antonio and Elsie were listed as "B12 Partners" of Pilar, and used an address in Niles, Illinois. (*Id.* ¶ 17.) Several months later Pilar submitted a change of address form identifying the same Niles, Illinois address as her mailing address, even though Pilar never resided at that location. (*Id.* ¶¶ 19, 21, 64.) Defendant processed the requested changes. (*Id.* ¶¶ 20-21.)

3. The Niles, Illinois address, which "is a business address located in a strip mall," was tied to Zamoras – the agent that wrote the policy – because Zamoras owned a company for decades at the same location. (Counterclaims/Third-Party Complaint ¶¶ 67, 73.) Additionally, in 2015 Zamoras changed her address as defendant's sales agent to the same Niles, Illinois address. (*Id.* ¶¶ 22, 67.) Thus, as of 2011, the listed address for the policy owner (Pilar) and the policy beneficiaries (the Cagases) was Zamoras' business address. (*Id.* ¶ 74.)

4. In 2017 Pilar – "or somebody purporting to be [her]" – telephoned defendant and requested to change the owner of the policy from Pilar to Zamoras, followed by an application to make Zamoras the owner and beneficiary. (Counterclaims/Third-Party Complaint ¶¶ 23-24.) The phone call was followed by an ownership and beneficiary change request form that stated Zamoras was the "[d]aughter" of Pilar. (*Id.* ¶ 25.) Defendant processed the requested change; however defendant later learned "there was no such mother-daughter relationship, and indeed, that there was no familial relationship whatsoever." (*Id.* ¶¶ 27, 65.)

***Defendant reinstates the policy after it lapses for non-payment; the sales agent transfers the policy to plaintiff***

5. In 2018 the policy lapsed when Zamoras failed to pay the premiums. (Counterclaims/Third-Party Complaint ¶ 28.) Thereafter, in 2019, Zamoras called defendant on

multiple occasions over a period of months to request reinstatement. (*Id.* ¶ 29.) Plaintiff's son, Gus Dahleh, participated with Zamoras during some of those phone calls. (*Id.* ¶¶ 30, 31.)

6. In furtherance of the reinstatement request, Pilar "purportedly" submitted a statement of health and insurability, which was a requirement for reinstatement. (Counterclaims/ Third-Party Complaint ¶ 32.)

7. In December 2019, defendant reinstated the policy. (Counterclaims/ Third-Party Complaint ¶ 32.) Soon after the policy was reinstated, Zamoras transferred ownership of the policy to plaintiff, and plaintiff subsequently designated himself as beneficiary. (*Id.* ¶¶ 35, 37.) Plaintiff's paperwork stated that his "address" was in Cicero, Illinois. (*Id.* ¶ 38.) Defendant alleges the Cicero, Illinois location was not plaintiff's "residential address," but instead is the "address of a liquor store," and further that the phone number provided by plaintiff for contact purposes actually belonged to plaintiff's son Gus. (*Id.* ¶ 70.)

***Following the insured's death, defendant discovers that the policy sales agent is not the insured's daughter and was convicted of defrauding elderly clients; defendant questions certain post-death statements by plaintiff's son***

8. Following Pilar's death in August 2024, defendant reviewed plaintiff's claim for payment of the death benefits. (Counterclaims/Third-Party Complaint ¶¶ 29, 46.)

9. Through its review defendant learned that, contrary to Zamoras' representation that she was Pilar's daughter, in fact "there was no such mother-daughter relationship, and indeed, that there was no familial relationship whatsoever." (Counterclaims/ Third-Party Complaint ¶ 65.) Defendant additionally discovered that in October 2018 Zamoras was charged with defrauding at least a dozen elderly clients of approximately $2.5 million, between 2009 and 2018, and that Zamoras "is from the Philippines and used her background to build a clientele that included primarily elderly Filipino-Americans, such as [Pilar]." (Id. ¶¶ 39-

40, 68.) Finally, defendant determined that in June 2022 Zamoras entered into a plea agreement was sentenced to 54 months in federal prison. (*Id.* ¶ 42.)

10. Regarding plaintiff, through communications with plaintiff and his son Gus following the insured's death, defendant learned plaintiff had trouble speaking due to Parkinson's disease and thus relied on Gus – whom defendant alleges "pled guilty to felony bank fraud in 2018" – to communicate with defendant regarding the policy. (Counterclaims/Third-Party Complaint ¶¶ 48, 51, 71.) Gus further told defendant that (1) that Pilar was a "family friend to whom they had lent money to in order to help her with bills;" (2) the transferred policy was "collateral for that loan;" (3) plaintiff remained the owner of the policy "as an investment" because Pilar "could not afford the premiums and that plaintiff had agreed to assume the obligation to pay the premiums;" and (4) when the policy lapsed, Gus and plaintiff "had met with [Pilar] . . . to reinstate the Policy." (*Id.* ¶¶ 52, 54, 56.) Defendant alleges those statements were false because plaintiff acquired the policy from Zamoras, not from Pilar. (*Id.* ¶¶ 53, 57, 62.)

11. Finally, defendant asserts Gus falsely stated "he knew nothing about Zamoras and that he had no business dealings with her" and that he had "met with Cenir and plaintiff to reinstate the Policy." (Counterclaims/Third-Party Complaint ¶¶ 58-62.) Defendant alleges those statements were false because Gus "had worked with Zamoras to reinstate the Policy and to transfer ownership of the Policy to plaintiff in 2019 – the same time period when Zamoras already was facing federal fraud charges." (*Id.* ¶ 60.)

***Defendant files counterclaims and third-party claims against plaintiff and three prior beneficiaries for interpleader and rescission***

12. Defendant has filed a pleading captioned as counterclaims and a third-party complaint against plaintiff, Bonifacio, and the Cagases. (Counterclaims/Third-Party Complaint *passim*.) Defendant alleges it is a citizen of Iowa, while plaintiff, Bonifacio, and the

Cagases are all citizens of Illinois. (*Id.* ¶¶ 1-5.) The pleading contains two counts, one for interpleader (Count I) and another for rescission Count II. (*Id.* ¶¶ 76-95.) All of the factual allegations for the interpleader count are incorporated into the rescission count. (*Id.* ¶¶ 76, 91.) The filing contains a single unified prayer for relief following the two counts. (*Id.* at p. 16.)

13. In Count I, defendant asserts it is "merely a neutral stakeholder" that "claims no beneficial interest in the policy proceeds" and thus "is obligated under the Policy to pay proceeds to the entitled recipient," while at the same time asserting "its reservation of rights set forth in in the preceding paragraphs of this pleading." (Counterclaims/Third-Party Complaint ¶¶ 77-78.) Defendant next alleges it would have rejected any ownership transfer to Zamoras in 2017 had it known Zamoras was not Pilar's daughter, and thus the Cagases are potential beneficiaries, or possibly Bonifacio is the beneficiary if the Cagases are improperly tied to Zamoras through the common address. (*Id.* ¶¶ 20, 80, 83-85.) Citing both Fed. R. Civ. P. 22 and 28 U.S.C. § 1335, defendant joins the Cagases and Bonifacio as third-party defendants who allegedly have "colorable claims to the death benefits," requests leave to deposit the insurance proceeds with the Registry of the Court and be discharged from any liability, receive its costs and attorneys' fees, and finally to take "additional discovery into the circumstances surrounding the original issuance of the Policy. . . ." (*Id.* ¶¶ 8, 86, 89-90.)

14. Further in Count I, despite defendant's self-description as a "merely a neutral stakeholder" that "claims no beneficial interest in the policy proceeds," defendant goes on to assert it should be entitled to receive the death benefits itself. (Counterclaims/Third-Party Complaint ¶ 88.) Specifically, in its claim for rescission in Count II, defendant "seeks a judicial declaration that no life insurance coverage went into effect as a result of the December 2019 reinstatement because [defendant] would not have reinstated coverage if truthful disclosures had

been made." (*Id.* ¶ 94.) Although this claim to rescind from Count II is not specifically incorporated into the interpleader claim, defendant plainly invokes its rescission claim in Count I by identifying itself as a claimant to the proceeds:

> [Defendant] seeks to deposit the funds at issue with the Registry of the Court for ***subsequent disbursement in accordance with the judgment of this Court, whether to [defendant],*** plaintiff, or one or both of the third-party defendants.

(*Id.* ¶ 94) (emphasis added).

15. Finally, in Count II defendant seeks a declaratory judgment of rescission. (Counterclaims/Third-Party Complaint ¶¶ 91-95.) Defendant asserts it would have refused to reinstate the policy when it lapsed for non-payment, had it known Zamoras was not Pilar's daughter. (*Id.* ¶¶ 92-94.) Defendant thus requests a "judicial declaration that no life insurance coverage went into effect as a result of the December 2019 reinstatement. . . ." (*Id.* ¶ 94.)[2]

## ARGUMENT

### I. THERE IS NO JURISDICTION OVER DEFENDANT'S STATUTORY INTERPLEADER CLAIM AND DEFENDANT'S ALLEGATIONS NEGATE INTERPLEADER BY RULE.

In Count I, defendant seeks to interplead pursuant to Rule 22 of the Federal Rules of Civil Procedure ("rule interpleader") and further pursuant to 28 U.S.C. § 1335 ("statutory interpleader"). (Counterclaims/Third-Party Complaint ¶¶ 8, 90.)

Rule interpleader allows a party exposed to multiple liability from competing claims to require those claimants to interplead, and jurisdiction exists when the stakeholder is diverse from all claimants. *See Mounts v. Metropolitan Life Insurance Co.*, 14 C 808, 2014 WL

[2] Defendant also incorporates into both counts an allegation that, due to the "multiple indicia of fraud uncovered thus far through its claim investigation," defendant "intends to conduct further discovery" and "reserves the right to amend its Counterclaims and third-party claims to declare the Policy invalid and *void ab initio* as a product of fraud . . . ." (Counterclaims/Third-Party Complaint ¶¶ 75, 95.)

5619148, *2 (N.D. Ill. Nov. 4, 2014) ("Rule 22 allows a party to join as interpleader defendants any persons with claims that may expose [the interpleader] plaintiff to double or multiple liability. . . . [d]iversity jurisdiction exists over Rule 22 interpleader actions when the stakeholder is diverse from all of the claimants . . . .") (internal quotation marks omitted).

Alternatively, statutory interpleader requires "[t]wo or more adverse claimants" who are "claiming or may claim to be entitled to [money or property worth $500 or more] . . ." 28 U.S.C. § 1335(a). For jurisdiction to attach, the claimants must be "of diverse citizenship," and the stakeholder must "deposit[s] such money or property . . . under such obligation into the registry of the court . . . or [give a] bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper." (*Id.*)

For both forms of interpleader, the fear of multiple liability must be more than minimal, *i.e.*, the potential clams must a "minimal threshold level of substantiality." *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008) (quoting *Indianapolis Colts v. Mayor and City Council*, 741 F.2d 954, 958 (7th Cir. 1984)). Additionally, although Rule 22 permits a stakeholder to "den[y] liability in whole or in part to any or all of the claimants," typically the stakeholder serves as a disinterested party with respect to the disposition of disputed funds. *See Mounts v. Metropolitan Life Insurance Co.*, supra, 2014 WL 5619148 at *2 ("[i]nterpleader exists to resolve disputes in which multiple parties assert claims against a single stakeholder alleging that the stakeholder is liable to them for the same res that can be paid only once, the proceeds of a single insurance policy for example. . . . [t]hrough interpleader, a disinterested stakeholder can bring all competing claimants into a single forum to resolve the dispute").

Here, defendant's claim for interpleader in Count I is facially infirm as pled and therefore should be stricken or dismissed. First, although defendant primarily seeks statutory

interpleader through the deposit of funds with Registry of the Court, there is no jurisdiction over the statutory interpleader claim. Defendant alleges all of the adverse claimants – plaintiff, Bonifacio Cenir, and the Cagases – are citizens of Illinois, which negates jurisdiction under 28 U.S.C. § 1335.

Further, although defendant describes itself as a clamant that will pursue the deposited funds for itself through its claim for rescission in Count II, based on a ruling from the Eastern District of Wisconsin, defendant would not qualify as an adverse claimant for purposes of statutory interpleader jurisdiction. *See American Family Mutual Insurance Co. v. Roche*, 830 F. Supp. 1241 (E.D. Wis. 1993) (insurer not an adverse claimant for purposes of statutory interpleader even though it also disputed liability on the policy); *but see AmGuard Insurance Co. v. SG Patel & Sons II LLC*, 999 F.3d 238 (4th Cir. 2021) (disagreeing with *Roche* and treating insurer that disputed amount of available proceeds as a claimant for purposes of statutory interpleader). Accordingly, defendant's request in Count I to deposit funds with the Court, together with any other relief sought pursuant to statutory interpleader, should be stricken or dismissed for lack of jurisdiction.

Second, Count I should be stricken or dismissed for the additional reason that defendant's core allegations are inherently contradictory and negate its claimed right to bring an interpleader at all, whether by rule or by statute. As set forth above, defendant seeks to deposit the death benefits with the Court – thus describing itself as "merely a neutral stakeholder" that "claims no beneficial interest in the Policy proceeds" – but then undercuts its own assertion of neutrality with a "reservation of rights" to seek the proceeds for itself:

> Midland claims no beneficial interest in the Policy proceeds and subject to its reservation of rights set forth in in the preceding paragraphs of this pleading, is merely a neutral stakeholder.
>
> . . . .

> [Defendant] seeks to deposit the funds at issue with the Registry of the Court for subsequent disbursement in accordance with the judgment of this Court, whether to [defendant], plaintiff, or one or both of the third-party defendants.

(Counterclaims/Third-Party Complaint ¶¶ 77 94.) By joining the group of claimants against the to-be-deposited funds, defendant negates its own alleged neutrality and lack of interest in the death benefits, thus going beyond merely denying liability and contravening the basic purpose of interpleader. *See American Family Mutual Insurance Co. v. Roche*, supra, 830 F. Supp. at 1249 ("federal interpleader was not created to decide coverage disputes [but instead] . . . was created to decide disputes regarding the allocation of the insurance fund once coverage is admitted or found").

Third, Count I additionally is deficient because the supposed claims by the Cagases and Bonifacio do not meet a "minimal threshold level of substantiality," *Aaron v. Mahl*, *supra*, 550 F.3d at 663. Specifically, defendant says it would have refused to reinstate the policy after it lapsed for non-payment, had defendant known Zamoras was not Pilar's daughter. Those allegations, which are included in Count I by virtue of defendant's request for the policy proceeds, negate defendant's allegations that the Cagases and Bonifacio have "colorable claims to the death benefits." Based on Zamoras' alleged false claim to be Pilar's daughter, defendant says it would have refused two separate requests by Zamoras – (1) to make Zamoras the owner and beneficiary in 2017; and (2) to reinstate the lapsed policy in 2019. Refusing to reinstate the lapsed policy in 2019 would leave the policy lapsed and would moot any potential claim by the Cagases or Bonifacio in 2017 or earlier that prior transfers were fraudulent.

Thus, defendant's own filing trumps its contrary assertions that interpleader is proper here. Although Fed. R. Civ. P. 8(d) allows a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically," defendant makes no such alternative or

hypothetical allegations here. Instead, defendant has made allegations in Count I that negate its right to bring a claim for interpleader, and thus has "pled itself out of the [Rule 8(d)'s] protection." *See CF Entertainment, Inc. v. The Nielsen Company U.S., LLC*, No. 20-cv-2393, 2023 WL 5289296, *13 (N.D. Ill. Aug. 17, 2023) (granting motion to dismiss in part; "a party may not plead unjust enrichment in the alternative to breach of contract if it incorporates the other paragraphs of the complaint alleging the existence of a contract into its unjust-enrichment claim") (citation, internal quotation marks omitted).

For those reasons, Count I for interpleader should be stricken or dismissed.

## II. DEFENDANT'S CLAIM FOR RESCISSION SHOULD BE STRICKEN OR DISMISSED BECAUSE THE CLAIM INCORPORATES THE INTERPLEADER ALLEGATIONS AND INCLUDES AN IMPROPER REQUEST FOR DISCOVERY.

Next, Count II – which "seeks a judicial declaration that no life insurance coverage went into effect as a result of the December 2019 reinstatement because [defendant] would not have reinstated coverage if truthful disclosures had been made" (Counterclaims/ Third-Party Complaint ¶ 94) – also should be stricken or dismissed. Count II incorporates " all of the preceding allegations in this Counterclaim and Third-Party Complaint" (*id.* ¶ 91), thus including defendant's allegations for interpleader from Count I and leaving plaintiff and the third-party defendants in the dark as to what allegations pertain to the rescission claim and against which parties the claim for rescission has been brought.

The courts have rejected this practice of over-incorporation, known as "shotgun" pleading, because "[s]uch pleadings make it ‘virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 783 (N.D. Ill. 2015) (quoting *CustomGuide v. CareerBuilder, LLC*, 813 F.Supp. 2d 990, 1001 (N.D. Ill. 2011) (internal quotation marks omitted); *see also See CF*

*Entertainment, Inc. v. The Nielsen Company U.S., LLC*, *supra*, 2023 WL 6289296 at *13 (rejecting unjust enrichment claim that incorporated breach-of-contract allegations). Count II therefore should be stricken or dismissed.[3]

Finally, Count II also is flawed because defendant purports to "reserve[] the right to amend its claim for declaratory judgment following further discovery into the circumstances surrounding the original issuance of the Policy if that discovery reveals that the Policy is the product of fraudulent and/or unlawful conduct, rendering the Policy void *ab initio*." (Counterclaims/Third-Party Complaint ¶ 95.) Because neither a reservation of the right to amend nor a declaration that discovery will be taken is a proper allegation in a complaint, those allegations should be stricken as well.

## III. DEFENDANT'S ALLEGATIONS REGARDING PLAINTIFF'S MAILING ADDRESS AND PHONE NUMBER AND PLAINTIFFS SON SHOULD BE STRICKEN PURSUANT TO FED. R. CIV. P. 8

Further, defendant's allegations regarding plaintiff's address and phone number, along with allegations of false statements by plaintiff's son and a criminal plea, fail to support any proper claim for relief and therefore should be stricken.

As set forth above, defendant says there are "indicia of fraud" regarding plaintiff that defendant "uncovered" in its investigation of plaintiff's claim for death benefits. First, defendant asserts that when plaintiff became the owner of the policy, plaintiff provided an address that was not plaintiff's "residential address," but instead is the "address of a liquor store."

[3] Defendant additionally says numerous times that certain actions taken were "purported" actions or "purportedly" were taken by specific individuals, or were taken by individuals "masquerading" as Pilar. (Counterclaims/Third-Party Complaint ¶¶ 10, 11, 14, 16, 32, 33, 67, 70, 80. 81. 83.) Those allegations are impossible to answer and thus violate Rule 8(a)'s "plain and concise" pleading requirements, because any admission or denial would be unclear as to whether the alleged conduct is true or false, or whether the words "purported," "purportedly" or "masquerading" are true or false.

Next, defendant contends the phone number plaintiff provided to defendant actually belongs to plaintiff's son. Finally, defendant alleges plaintiff son, who defendant says has a felony guilty plea in an unrelated case from 2018, provided false information as to how he or plaintiff met Pilar (the insured), whether or why they loaned money to Pilar, whether they met with Pilar to discuss reinstatement, and whether they had "business dealings" with Zamoras.

Those allegations should be stricken because defendant fails to explain how they support interpleader and/or rescission. Defendant nowhere alleges plaintiff's mailing address was required to be residential instead of a business location, or that plaintiff – who has difficulty speaking due to Parkinson's disease – made a material misrepresentation by supplying his son's phone number. Further, assuming for purposes of this motion that plaintiff's son lied about meeting with Pilar, loaning money to her, or not having business dealings with Zamoras, defendant fails to explain that those alleged misstatements support rescission or negate plaintiff's entitlement to death benefits. Finally, as to defendant's reference to plaintiff's son's guilty plea from six years ago in an unrelated case, that allegation would only become relevant for potential impeachment purposes at a possible future evidentiary hearing, and has no proper place in defendant's pleading.[4]

In sum, plaintiff should not be forced to speculate as to why or how defendant's alleged facts relate to its claims; nor should allegations remain in a complaint when they have no apparent relevance. *See Phillips v. Redkey Town Board*, No. 1:17-CV-224, 2017 WL 3503273,

---

[4] Nor does defendant explain why Zamoras' guilty plea for fraud relates to its claims for interpleader or rescission. Defendant fails to allege that Zamoras defrauded Pilar in any respect, including with respect to the policy. Defendant has had five months to investigate the claim, contact plaintiff, Bonifacio, the Cagases and others, and make proper allegations. Pointing to Zamoras' guilty plea and suggesting defendant needs more time to investigate the facts is not an acceptable pleading practice.

*3 (N.D. Ind. Aug. 15, 2017) ("the fact that the Court is forced to speculate as to the nature of [plaintiff's] claim or claims demonstrates the insufficiency of his Complaint . . . .") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) *and Rivera Melendez v. Merck & Co., Inc.*, No. 6:18-cv-408-Orl-40GJK, 2018 WL 8224822, *1 (M.D. Fla. May 29, 2018) (rejecting complaint that was "excessively long-winded and contains needless repetition and irrelevant factual allegations that detract from Plaintiff's attempt to state a claim").

For those reasons, defendant's allegations regarding plaintiff's contact information and plaintiff's son should be stricken.

## IV. THE THIRD-PARTY CLAIMS SHOULD BE STRICKEN AND RE-FILED AS COUNTERCLAIMS.

Finally, even if defendant's pleading was otherwise properly pled, which it is not, defendants' third-party claims are procedurally incorrect and therefore should be stricken and re-filed as counterclaims. Under Fed. R. Civ. P. 14(a)(1), third-party claims are limited to claims against "a nonparty who is or may be liable to it for all or part of the claim against [the third-party plaintiff]." Here, defendant names the third-parties as interpleader defendants, and does not seek any form of indemnification for damages that defendant may be liable to pay.

The correct procedure, accordingly, is to bring counterclaims against those parties under Fed. R. Civ. P. 13(a)(1)(A), which allows for counterclaims "aris[ing] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Rule 13(a)(1)(B) allows counterclaims against non-parties when doing so would not impede the Court's jurisdiction, and prescribes procedures for naming such non-parties by incorporating Rules 19 and 20 for adding parties to a counterclaim . *See* Fed. R. Civ. P. 13(h); *see also* Fed. R. Civ. P. 22(a) (defendant "may seek interpleader through a crossclaim or counterclaim" when exposed to double or multiple liability); *Comtel Technologies, Inc. v. Paul H. Schwendener, Inc.*,

04 C 3879, 2005 WL 433327, *13 (N.D. Ill. February 22, 2005) (proper method to bring a non-party into a claim against plaintiff is to file a counterclaim and move to join non-party through Rules 13(h) and 20) *and White v. Richert*, No. 15 C 8185, 2016 WL 6139929, *3 (N.D. Ill. Oct. 21, 2016) (dismissing counter-defendants "because they are not parties to this case, and [defendant] has not followed the proper procedure to seek to make them parties").

For those reasons, defendant's third-party claims should be stricken and refiled as counterclaims.

**CONCLUSION**

For the above reasons, defendant's counterclaim and third-party complaint should be stricken or dismissed.

FAYEZ DAHLEH

By: /s/ Glenn E. Heilizer
One of his attorneys

Glenn E. Heilizer
HeilizerLaw
Five North Wabash Ave.
Suite 1304
Chicago, Illinois 60602
312-759-9000
glenn@heilizer.com
ARDC No. 6196412

Dated: February 7, 2025