**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FAYEZ DAHLEH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MIDLAND NATIONAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| MIDLAND NATIONAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | Case No. 24 C 11931 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| FAYEZ DAHLEH, ANTONIO CAGAS, | ) | |
| ELSIE CAGAS, and BONIFACIO CENIR, | ) | |
| | ) | |
| Counter-Defendants. | ) | |
| BONIFACIO CENIR, | ) | |
| | ) | |
| Cross-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FAYEZ DAHLEH and MIDLAND | ) | |
| NATIONAL LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Cross-Respondents. | ) | |

**OPINION AND ORDER**

On November 20, 2024, plaintiff Fayez Dahleh filed his complaint against defendant

Midland National Life Insurance Company ("Midland"). Dahleh seeks payment of life insurance

proceeds pursuant to a life insurance policy ("Policy") issued by Midland. Dahleh's complaint

alleges that Midland failed to timely pay the benefit owed to him under the Policy. Midland filed

its counterclaim against Dahleh on April 9, 2025. Midland alleges that the Policy should be

declared void because its coverage was reinstated on false pretenses in December 2019. In the

alternative, Midland seeks relief in the nature of interpleader, contending that it may face

multiple claims to the Policy's benefit. On June 18, 2025, Bonifacio Cenir, husband of the

insured and a former Policy beneficiary, filed his amended crossclaim against Dahleh, seeking a

declaration that he is the rightful beneficiary of the Policy. Before this court are Dahleh's

motions to dismiss Count II of Midland's counterclaim (dkt. 33) and to dismiss B. Cenir's

amended crossclaim (dkt. 52). For the reasons set forth below, the court denies Dahleh's

motions.

## **BACKGROUND**

### I.      **Midland's Counterclaim[1]**

In August 2008, Midland issued a Policy insuring the life of Pilar Cenir, with a death

benefit in the amount of $900,000. P. Cenir applied for the policy with the assistance of a writing

agent, Lucita Zamoras. In 2018, Zamoras was charged by federal prosecutors with defrauding

investors in a scheme to take advantage of elderly clients. Zamoras is currently serving a prison

sentence as a result of those charges.

P. Cenir originally designated her husband, B. Cenir, as beneficiary of the Policy. But in

2011, B. Cenir was removed as a beneficiary under the Policy, and Antonio Cagas was instead

made its primary beneficiary with Elsie Cagas listed as the contingent beneficiary. Between 2011

and 2017, P. Cenir failed to pay the Policy's premiums on more than twenty occasions, causing

---

[1] This section is drawn from Midland's counterclaim. For the purposes of the motion to dismiss, Midland's well-pleaded allegations are accepted as true. *See Robb Container Corp* v. *Sho-Me Co.*, 566 F. Supp. 1143, 1155 (N.D. Ill. 1983).

the Policy to lapse on at least four occasions. Then, in August 2017, Zamoras submitted policy ownership and beneficiary change forms to Midland, seeking to change the Policy's owner from P. Cenir to herself. Midland's compliance rules prohibited an insurance sales agent from acquiring ownership of a policy insuring one of her clients unless the insured was an immediate family member. Zamoras was not, but Zamoras nevertheless indicated on the forms that she was P. Cenir's daughter. Midland subsequently approved Zamoras's application, causing P. Cenir to forfeit her interest in the Policy. Zamoras assumed ownership of the Policy and the obligation to pay its premiums in August 2017.

After acquiring ownership of the Policy, Zamoras continued to represent that she was P. Cenir's daughter. The Policy's coverage again lapsed in February 2018 due to Zamoras's failure to pay the required premiums. Four days later, Zamoras applied to reinstate the Policy's coverage and again identified herself as P. Cenir's daughter on the reinstatement application. Midland reinstated coverage, although it would not have done so had it known that Zamoras was not related to P. Cenir. Zamoras further represented that she was P. Cenir's daughter on several occasions between February 2018 and December 2019, including on recorded phone calls with Midland and on a subsequent reinstatement application filed in May 2019. Midland approved the application and reinstated the Policy in December 2019. In so reinstating, Midland again relied on its belief that Zamoras was P. Cenir's daughter.

On December 27, 2019, after she was charged by federal prosecutors with defrauding investors, Zamoras transferred ownership of the Policy to Dahleh. But due to Zamoras's false representations regarding her status as P. Cenir's daughter, Dahleh did not acquire ownership of a valid and enforceable policy. Dahleh was named primary beneficiary of the Policy on January 8, 2020, and remained so at the time of P. Cenir's death in August 2024.

3

Midland seeks a declaratory judgment that the Policy is void for intentional misrepresentation due to Zamoras's representations that she was P. Cenir's daughter. Midland claims that it would not have reinstated the Policy's coverage and approved the ownership transfer to Zamoras in August 2018 absent Zamoras's representations that she was P. Cenir's daughter. In the alternative, Midland brings an action in the nature of interpleader, contending that, if the Policy is found to have been in force at the time of P. Cenir's death, it is likely to face multiple competing claims to the Policy's proceeds. These multiple completing claims include claims from, *inter alia*, B. Cenir, A. Cagas, and E. Cagas. Midland further alleges that, due to the nature of Zamoras's representations, and her criminal conviction for defrauding elderly clients residing within the same community as P. Cenir, the Policy may be *void ab initio* as an illegal wagering contract. This would entitle Midland to retain the premiums paid on the Policy and also render it a party with a competing claim for the purposes of interpleader.

## II.     Cenir's Crossclaim[2]

B. Cenir's crossclaim incorporates the allegations from Midland's counterclaim, including that he was the named beneficiary when the Policy was issued in 2008 and that Zamoras misrepresented herself as P. Cenir's daughter to obtain ownership and reinstatement of the Policy in August 2017. B. Cenir further alleges as follows: B. Cenir does not know A. Cagas or E. Cagas, who were respectively named in 2011 as the Policy's new primary and contingent beneficiaries. Further, the beneficiary change from B. Cenir to A. Cagas and E. Cagas was made without his knowledge or consent. Midland also processed two address changes for the Policy in 2011 and 2012, one of which corresponded to an address subsequently associated with Zamoras

---

[2] This section is drawn from Cenir's crossclaim. (Dkt. 45.) For the purposes of the motion to dismiss, Cenir's well-pleaded allegations are accepted as true. *See Rafik* v. *Material Handling Sys., Inc.*, No. 19 C 5578, 2020 WL 4345422, at *1 n.1 (N.D. Ill. Jul. 29, 2020).

in 2015. Neither B. Cenir nor P. Cenir ever resided at either updated address listed on the Policy. B. Cenir was never informed that the Policy had ever been altered, lapsed, or otherwise revised by Midland. B. Cenir additionally claims, on information and belief, that he was the sole intended beneficiary under the Policy. B. Cenir brings an action for declaratory judgment, seeking a declaration that he is the rightful beneficiary to any policy benefit or premiums owed by Midland. He also seeks a declaration that Dahleh has no beneficiary or ownership rights under the Policy.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint, including, *e.g.*, a crossclaim or counterclaim. *See* Fed. R. Civ. P. 12(b)(6); *Hallinan* v. *Fraternal Order of Police Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *see also CIC Plus, Inc.* v. *Dexheimer*, No. 22 C 1523, 2022 WL 17068460, at *2 (N.D. Ill. Nov. 17, 2022) (considering motion to dismiss counterclaim); *Brown* v. *Target Corp.*, No. 12 C 3036, 2013 WL 871953, at *2 (N.D. Ill. March 4, 2013) (considering motion to dismiss crossclaim). At the motion to dismiss stage, the court accepts as true all of the plaintiff's well-pleaded factual allegations and draws all reasonable inferences in the non-movant's favor. *See Taha* v. *Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). To survive a motion to dismiss, a complaint must contain sufficient factual information, accepted as true, to state a plausible claim for relief that rises above the speculative level. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

"Interpleader is an equitable procedure used when the stakeholder is in fear of exposure to double liability or the vexation of litigating conflicting claims." *Aaron* v. *Mahl*, 550 F.3d 659, 663 (7th Cir. 2008). Interpleader forces "all the claimants to litigate their claims in a single action brought by the stakeholder." *Indianapolis Colts* v. *Mayor and City Council of Balt.*, 733 F.2d 484, 486 (7th Cir. 1984). Interpleader is only justified when the interpleading party has a "real and reasonable fear of double liability or conflicting claims." *Aaron*, 550 F.3d at 663. The stakeholder "need not show that each competing claimant has a winning claim; a reasonable fear of double liability is enough." *Arnold* v. *KJD Real Est., LLC*, 752 F.3d 700, 704 (7th Cir. 2014).

## ANALYSIS

### I.     Dahleh's Motion to Dismiss Count II of Midland's Counterclaim

At the outset, Dahleh argues that Count II of Midland's counterclaim should be dismissed because it incorporates by reference all the preceding allegations in Count I, resulting in what Dahleh characterizes as a shotgun pleading.

A complaint may be dismissed as a shotgun pleading where, because each count incorporates by reference all preceding paragraphs and counts of the complaint, it is "impossible to know which allegations of fact are intended to support which claim(s) for relief." *CustomGuide* v. *CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (quoting *Anderson* v. *Dist. Bd. Of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). But here, no such confusion exists. Rather, Midland's prior allegations regarding the Policy's multiple beneficiary changes and its lapse for non-payment in 2019 are material to Midland's interpleader claim[3] in Count II. Midland claims in Count I that it has a colorable claim to the

---

[3] Midland brings its claim "in the nature of interpleader." (Dkt. 29 ¶ 47.) But because such actions are treated generally the same as interpleader actions, *see Braid* v. *Stilley*, 142 F.4th 956, 962 (7th Cir. 2025) (citing 28 U.S.C. § 1335), Midland's claim in the nature of interpleader is referred to as its interpleader action throughout, for ease of reference.

Policy's proceeds, on the basis that Midland would not have reinstated the policy but for Zamoras's misrepresentations. Further, the preceding allegations indicate that B. Cenir, A. Cagas, and E. Cagas may also possess competing claims to the Policy's death benefit as a result of the various Policy transfers performed at Zamoras's direction. Taken together, these preceding paragraphs support the existence of "adverse and independent" claims of "several claimants" to which Midland "denies liability in whole or in part." Fed. R. Civ. P. 22. As such, Midland's allegations in Count I are material to its interpleader claim in Count II, and thus, Count II should not be dismissed for over-incorporation.

Dahleh next argues that Midland has failed to allege the existence of competing claims sufficient to give rise to an interpleader action. Here, Dahleh argues that Midland's claim that the Policy should be declared void for non-payment in 2019 negates any claims B. Cenir or the Cagases could assert to the Policy's death benefit, since they had been removed as beneficiaries prior to 2019. Dahleh asserts that "there would be no point to litigate for an interest in a policy that is lapsed for non-payment[.]" (Dkt. 33 ¶ 8.) Midland responds that it has adequately alleged a claim for interpleader, since, if the Policy is found to have been in force at the time of P. Cenir's death, it may face multiple competing claims to the Policy's death benefit.

The court finds that Midland has adequately pleaded that it may face competing claims to the Policy's benefits, and interpleader is thus proper. Courts in this district have recognized that interpleader is appropriate when the proper beneficiary of a life insurance policy is in dispute. *See Banner Life Ins. Co.* v. *Brazil*, No. 18 CV 3850, 2019 WL 10250939, at *2 (N.D. Ill. July 22, 2019); *Principal Life Ins. Co.* v. *Noble*, No. 18 CV 4576, 2019 WL 1651750, at **1–2 (N.D. Ill. April 17, 2019). And at the motion to dismiss stage, Midland need only allege that it has a "real and reasonable" fear of double liability or conflicting claims arising under the Policy. *Aaron*, 550

F.3d at 663. Midland asserts that it would not have approved the ownership transfer to Zamoras, absent Zamoras's representation that she was P. Cenir's daughter. This calls into question whether Zamoras had the authority to remove A. Cagas and E. Cagas as the Policy's beneficiaries in 2017, or to transfer ownership of the Policy to Dahleh in 2019. Additionally, circumstances surrounding the Policy's inception and Zamoras's subsequent fraud conviction provide a basis for Midland to reasonably question whether P. Cenir ever intended for the beneficiary to be changed in 2011 from B. Cenir to A. Cagas and E. Cagas. Further, Dahleh has already sought payment of the Policy's death benefit. Taken together, these allegations establish that Midland faces multiple claims for the Policy proceeds.[4] This is precisely the risk of duplicate liability that interpleader is designed to address. *See Aaron*, 550 F.3d at 663.

Midland's request in Count I that the Policy be declared void as of December 2019 due to non-payment also does not warrant dismissal of its interpleader claim. Dahleh's argument effectively asks this court to deny Midland its ability to plead in the alternative. Under federal pleading standards, "a plaintiff may plead claims in the alternative, even if the claims are contradictory." *Prudential Ins. Co. of Am.* v. *Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008); *see also Pizzo* v. *Bekin Van Lines Co.*, 258 F.3d 629, 635 (7th Cir. 2001) ("[t]here is nothing wrong with alternative pleading"). Moreover, Fed. R. Civ. P. 22 explicitly allows for interpleader actions to proceed even where a "plaintiff denies liability in whole or in part to any or all of the claimants." As such, even if Midland seeks a declaration that the 2019 Policy reinstatement is void in Count I, Midland is entitled to bring its interpleader claim in the alternative in Count II, since it has adequately alleged that it may face a real and reasonable fear of double liability if the Policy is found to have been in force at the time of P. Cenir's death.

---

[4] The court does not need to assess the merits of these competing claims at the motion to dismiss stage. *See Principal Life*, 2019 WL 1651750, at *3.

After all, in contrast to a classic interpleader claim, an "in the nature of interpleader" claim does not require the stakeholder to be neutral. *See Indianapolis Colts*, 733 F.2d at 486.[5]

As such, the court declines to dismiss Count II of Midland's counterclaim.

**II.       Dahleh's Motion to Dismiss B. Cenir's Crossclaim**

As an initial matter, in moving to dismiss B. Cenir's crossclaim, Dahleh asks the court to consider the language of the Policy, which Dahleh has excerpted in his motion to dismiss. That language provides that the owner may change revocable beneficiaries at any time without the beneficiary's consent. Based on this language, Dahleh argues that B. Cenir is precluded from stating a claim for relief. A court may consider a document attached to a motion to dismiss without converting the motion into a motion for summary judgment where the document is referred to in a cross-claimant's complaint and is central to his claims. *See Wright* v. *Assoc. Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir. 1994). But here, the Policy's terms are not central to B. Cenir's crossclaim, because B. Cenir's claim instead arises from the fraudulent circumstances surrounding his removal as the Policy's beneficiary in 2011, rather than the authority of the owner to make changes to beneficiaries. *See, e.g.*, *Oto* v. *Metro. Life Ins. Co.*, 224 F.3d 601, 604 (7th Cir. 2000). As such, the court declines to consider the Policy language at this juncture.

Next, Dahleh claims that B. Cenir's allegation that Zamoras falsely represented herself as P. Cenir's daughter in order to gain ownership of the Policy in 2017 defeats his crossclaim. Here,

---

[5] Relatedly, Dahleh's assertion that Midland cannot "self-reference" as a party with a claim for the purposes of interpleader in Count II is off base. (Dkt. 33 ¶ 11.) Dahleh's argument is difficult to follow here, but it also appears to be based on the presumption that Midland cannot allege that it is one of the parties with a potential claim to the Policy proceeds. As previously discussed, interpleader actions explicitly allow for such framing. *See* Fed. R. Civ. P. 22.

Additionally, Dahleh argues that Count II must be dismissed, because Midland has failed to allege an illegal wagering claim. But even assuming *arguendo* that Midland's illegal wagering claim is insufficiently pled, this does not provide grounds to dismiss Midland's interpleader claim, which independently rests on Midland's real and reasonable fear of duplicate liability to B. Cenir and the Cagases.

Dahleh argues that because Midland also relies on this allegation to support its claim that the 2019 Policy reinstatement should be declared void, this allegation eliminates B. Cenir's rights under the Policy. This argument is premature. B. Cenir does not claim that the policy was void but rather that Zamoras's misrepresentations indicate that he was the only intended beneficiary. As such, Dahleh is asking the court to weigh the merits of B. Cenir's claims against Midland's rather than to assess whether B. Cenir has plausibly stated a claim for relief. But whether the Policy was actually void at the time of P. Cenir's death is an issue of fact that is inappropriate for resolution at the motion to dismiss stage. *See Cushing* v. *City of Chi.*, 3 F.3d 1156, 1163 (7th Cir. 1993).

Dahleh also contends that B. Cenir has not plausibly alleged that he is the rightful Policy beneficiary, such as would state a claim for declaratory judgment, because B. Cenir does not allege that the beneficiary change was effectuated without P. Cenir's knowledge, or that P. Cenir was deceptively induced to change the Policy's beneficiaries. Relatedly, Dahleh notes that B. Cenir's allegation regarding his status as the Policy's sole intended beneficiary is pleaded solely on information and belief.

In assessing whether B. Cenir's crossclaim plausibly alleges that he is the rightful Policy beneficiary, the court reads the crossclaim and assesses its plausibility as a whole. *See Atkins* v. *City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011). Although B. Cenir alleges that he was the sole intended beneficiary upon information and belief, several allegations in B. Cenir's crossclaim lend credibility to this allegation and raise the possibility of B. Cenir's right to relief above a "speculative level." *See Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Emp. Opportunity Comm'n* v. *Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The crossclaim alleges that B. Cenir was unaware of the 2011 beneficiary change, and

10

that he does not know A. Cagas or E. Cagas, who replaced him as beneficiaries. B. Cenir further alleges that in 2011 and 2012—around the same time that he was removed as the Policy's beneficiary—Midland processed two address changes under the Policy. B. Cenir contends that neither he nor P. Cenir resided at these addresses, but that one address matched an address associated with Zamoras in June 2015. The crossclaim also incorporates Midland's allegations concerning Zamoras's repeated representations to Midland that she was P. Cenir's daughter for the purpose of reinstating the Policy, and Zamoras's 2019 conviction.[6] Taken together, these allegations provide sufficient circumstantial evidence to support B. Cenir's central claim that P. Cenir did not intend the 2011 beneficiary change and that he is the sole intended beneficiary under the Policy.

Moreover, B. Cenir's crossclaim is not rendered deficient merely because it pleads on information and belief that B. Cenir was the sole intended beneficiary of the Policy. A claimant may plead upon information or belief where the missing pieces are outside of his control. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.* v. *Walgreen Co.*, 631 F.3d 436, 444 (7th Cir. 2011). Here, any information about the fraudulent activity surrounding the 2011 change would be outside of B. Cenir's control. B. Cenir's allegation is premised on the assumption that P. Cenir did not intend his removal as beneficiary in 2011. Taken alongside B. Cenir's other, aforementioned allegations, there is adequate factual detail to support B. Cenir's claim that he was the sole intended beneficiary.

---

[6] Dahleh also argues that B. Cenir's references to Zamoras's May 2019 conviction do not provide any basis for B. Cenir to recover the Policy's benefit because there is no allegation that P. Cenir was one of Zamoras's victims. However, as B. Cenir notes in his response, victimhood is not an element of a declaratory judgment claim. *See Koch Refin.* v. *Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1353 (7th Cir. 1987) (quoting *Foster* v. *Ctr. Twp. of LaPorte Cnty.*, 798 F.2d 237, 242 (7th Cir. 1986) ("A party bringing a declaratory action must show an actual controversy and a direct injury or threat of injury that is 'real and immediate, not conjectural or hypothetical.'")). B. Cenir's allegations regarding Zamoras's conviction are relevant insofar as they lend plausibility to B. Cenir's allegation that the 2011 beneficiary change was made in a fraudulent manner.

Finally, Dahleh argues that B. Cenir lacks standing to seek return of any premium payments should the court find the Policy void, as the premium payments would necessarily be owed to P. Cenir's estate, not B. Cenir. But as B. Cenir argues in his response, "[t]his argument fails as guesswork." (Dkt. 62 at 4.) At this juncture, there is insufficient evidence to conclude that B. Cenir would not be entitled to any premium payments should the Policy be deemed to have been previously voided. After all, B. Cenir has alleged that at least one premium payment was made "using funds held jointly by [P. Cenir] and [B.] Cenir." (Dkt. 45 ¶ 12.) Based on this payment, it is conceivable that B. Cenir is the proper recipient for repayment of at least some premium payments made. *Cf. Stewart* v. *Nw. Mut. Life Ins. Co.*, 180 F. Supp. 3d 566, 575 (N.D. Ill. 2016) (discussing insurance company's refund of premium payments to beneficiary who paid the premium). As such, the court finds that B. Cenir's claim for repayment of insurance premiums does not, at this pleading stage, suffer from a crippling standing defect, which warrants dismissal of this specific request for relief, and the court declines to dismiss B. Cenir's crossclaim.

## <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, Dahleh's motions to dismiss Count II of Midland's counterclaim (dkt. 33) and B. Cenir's crossclaim (dkt. 52) are denied.

Date: March 18, 2026

_____
U.S. District Judge Joan H. Lefkow

12